UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAYE TAYLOR,

Appellant and Defendant,

v.

JOSPEH KANE & DORIS KANE,

Appellees and Plaintiffs.

No. C 05-00691 MHP

**MEMORANDUM & ORDER**
**Denying Appellant's appeal from summary judgment.**

Appellant Faye Taylor filed this action seeking relief from summary judgment granted in the United States Bankruptcy Court for the Northern District of California. Taylor contends that the Bankruptcy Court erred in invalidating a lien Taylor had on certain real property owned by defendants Joseph and Doris Kane. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

BACKGROUND

I.  The Lien

Appellant Taylor is an attorney. The instant action arises from Taylor's legal representation of Doris Kane and the subsequent malpractice suit filed by the Kanes against Taylor. Taylor represented Doris Kane in a number of matters between 1998 and April 2002. By the end of October 2000, Doris Kane owed Taylor legal fees in the amount of $52,210.50. Bankruptcy Transcript ("Tr.") at 586.

Taylor attempted to secure the debt via a lien on the Kanes' residence. On November 1, 2000, Taylor sent the Kanes a Note Secured by Deed of Trust ("the Note") for $52,210.50 and a Deed of Trust ("the Deed") on the Kanes' home at 604 Canyon Drive. Tr. at 591–94. The Note and Deed secured the $52,210.50 owed for past legal services. Id. The Deed provided that future monthly bills for legal services would be added to the Deed unless objected to within ten days of mailing. Id. The Deed also specified that, in the event of default by the Kanes, Taylor could immediately file a notice of default and have the property sold at auction. In combination, these two terms effectively insulated from judicial scrutiny any fees to which the Kanes did not object within the 10-day window. Taylor attached a cover letter to the Note and Deed stating "I would encourage you to review the promissory note and deed of trust with counsel of your choosing." Tr. at 589. The Kanes executed the Note and Deed, securing Taylor's debt, on November 29, 2000. The Note and Deed were recorded on December 20, 2000. Tr. at 308.

Prior to the execution of the Note and Deed, the CIT Group held a first mortgage on 604 Canyon Drive in the amount of $390,792. The Kanes obtained a second mortgage on the property at the same time they were negotiating the terms of the Note and Deed with Taylor. On November 2, 2000, the Kanes signed a deed of trust on the 604 Canyon Drive home with Household Finance Corp. in the amount of $161,939.65 (the "Household Deed of Trust"), which was recorded on November 8, 2000. Tr. at 312. The Household Deed of Trust was superior to the Taylor Deed.

The Kanes' ongoing legal and financial difficulties resulted in a voluntary petition for Chapter 7 bankruptcy, filed on June 12, 2001. Tr. at 728. The Kanes were represented before the bankruptcy court by independent bankruptcy counsel Barbara McEntyre, with assistance by Taylor. Tr. at 604, 557–60. The 604 Canyon Drive property was exempt from the Chapter 7 proceedings because the combined secured debt of two mortgages and the Note and Deed, now valued at $95,680,[1] exceeded the property's value. Tr. at 613–14. The Taylor Deed was essential in securing this exemption; without it, the 604 Canyon Drive property could have been sold to settle a portion of the Kanes' debt. The Bankruptcy Court issued a discharge under 11 U.S.C. section 727 on December 12, 2001.

Taylor continued to represent the Kanes in a variety of matters, accumulating additional legal

2

fees on the promissory note, until April, 2002.  The Kanes allegedly owed Taylor some $110,000 in fees, secured by the Note and Deed, as of that date.  On February 7, 2003, Talyor filed a Request for Notice of Default and Sale of 604 Canyon Drive with the Marin County Recorder's Office.

II.     Proceedings Below

On October 3, 2003, the Kanes filed a malpractice action against Talyor in Marin County Superior Court, alleging inter alia that Taylor's actions relating to the Note and Deed violated California State Bar Rule of Professional Conduct 3-300, which governs business transactions between attorneys and their clients, and constituted malpractice.[2]  Tr. at 8–17.  On July 7, 2004, the Kanes filed for bankruptcy protection a second time, under Chapter 13.  Tr. at 430. The Kanes' 604 Canyon Drive home was again exempt from the Chapter 13 bankruptcy action because the debt secured by the house, including the $110,000 value of the Deed[3] and the $75,000 homestead exemption, exceeded the $750,000 value of the home.  Tr. at 438.

Taylor removed the state malpractice action to federal Bankruptcy Court by notice filed August 19, 2004.  After a hearing on the removal petition, the Bankruptcy Court remanded the bulk of the action to state court and retained the sole issue of the "validity, extent and priority of Ms. Taylor's Deed of Trust on 604 Canyon Drive."  Tr. at 36.  On November 17, 2004, Taylor's counsel took part in a particularly acrimonious deposition of Doris Kane in an attempt to explore her knowledge of finance in general, as well as her understanding of secured debt and the terms of the Taylor Note.  Tr. at 116–29.  Kane's counsel instructed Kane not to answer any questions that did not immediately relate to Taylor's legal representation of the Kanes.  Taylor's counsel terminated the deposition after asking a handful of questions and filed a motion to compel.  Tr. at 128–29.  At the hearing on the motion to compel, the Bankruptcy Court declined to rule on the motion and suspended further discovery until both parties submitted motions for summary adjudication of the validity of the Note and Deed.  Tr. at 174.  The judge stated that he would decide if further discovery was needed after review of the motions for summary judgment.  Tr. at 175.

Following briefing and a hearing, the Bankruptcy Court issued a Memorandum of Decision

3

1  invalidating the Note and Deed on the grounds that Taylor violated Rule 3-300 of the California
2  Rules of Professional Conduct.  In particular, the Bankruptcy Court found that Taylor violated the
3  requirement of Rule 3-300(A) that any transaction between an attorney and a client 1) be fair and
4  reasonable; and 2) the terms of the transaction be transmitted in writing to the client in a manner
5  which should reasonably have been understood by the client.  Tr. at 421–22.

Taylor argues on appeal that the Bankruptcy Court erred in granting the Kanes' motion for summary judgment because Talyor complied with California Rule of Professional Conduct 3-300, the Bankruptcy Court failed to consider relevant factors and considered irrelevant factors in its decision, and the Bankruptcy Court failed to compel discovery that would have materially affected the motions for summary judgment.  The Kanes rebut these arguments and allege that Taylor's appeal to this court is moot.

LEGAL STANDARD

A district court's standard of review over a bankruptcy court's decision is the same as that used by an appellate court over a district court's decision.  In re Boyd, 243 B.R. 756, 759 (N.D. Cal. 2000) (citing In re Baroff, 139 F.3d 439, 441 (9th Cir. 1997)).  On appeal, a district court must review a bankruptcy court's findings of fact under the clearly erroneous standard, and its conclusions of law de novo.  Fed. R. Bankruptcy P. 8013; see also In re Van DeKamp's Dutch Bakeries, 908 F.2d 517, 518 (9th Cir. 1990).

The test for clear error is not whether the appellate court would make the same findings, but whether the reviewing court, on the entire evidence, has a definite and firm conviction that a mistake was made.  Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985).  Stated another way, a reviewing court may not overturn a decision, even if it would have weighed the evidence in a different manner, so long as the trial court's view of the evidence is plausible in light of the entire record.  Id.  In applying the clearly erroneous standard of review, the appellate court views the evidence in the light most favorable to the party who prevailed below.  Lozier v. Auto. Owners Ins. Co., 951 F.2d 251, 253 (9th Cir. 1991).

A decision of the bankruptcy court on summary judgment is reviewed de novo. In re Dominion Corp., 199 B.R. 410, 412 (9th Cir. BAP 1996). A bankruptcy court's decision regarding a discovery motion is reviewed for abuse of discretion. Qualls v. Blue Cross, 22 F.3d 839, 844 (9th Cir. 1994) ("We will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment").

Application of the doctrine of judicial estoppel is reviewed for an abuse of discretion, even in the context of a grant of summary judgment. Johnson v. Start of Oregon, 141 F.3d 1361, 1364 (9th Cir. 1998). A court abuses discretion when it bases its ruling on a clearly erroneous assessment of the evidence. Cannery Row Corp. v. Leisure Corp., 234 B.R. 916, 920 (9th Cir. BAP 1999).

DISCUSSION

I.  Mootness of Taylor's Appeal

The Kanes first argue that Taylor's appeal to this court is moot because Taylor no longer has any financial interest in the property at 604 Canyon Drive. While appeal to this court was pending, Taylor executed a Substitution of Trustee and Deed of Full Reconveyance, relinquishing her interest in the property. The Kanes subsequently sold the property on August 5, 2005 to an unrelated third party. The Kanes assert that the reconveyance and sale render any further legal action moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). The mootness doctrine may apply to a case, as here, where an appellant has relinquished her interest in the property in controversy and the property itself is sold to a third party. However, there are four generally recognized exceptions to the doctrine, which are discussed in PUC v. FERC, 100 F.3d 1451, 1459 (9th Cir. 1996). One of the exceptions applies "where a petitioner would suffer collateral legal consequences if the actions being appealed were allowed to stand." Id. at 1461.

The Bankruptcy Court retained jurisdiction over a single claim in the instant action and

5

remanded the other claims to state court. Specifically, the second, third, and fourth causes of action in the Kanes' state malpractice suit, which have been remanded, involve the execution of the Note and Deed, the validity of which was decided by the Bankruptcy Court. Tr. at 10–18. The final disposition of the Bankruptcy Court's decision on the Rule 3-300 claim will undoubtedly be used in the state action; therefore, the ruling creates collateral legal consequences that prevent the appeal to this court from being moot.

In addition to the direct effect on the state proceedings, the Bankruptcy Court's findings may have consequences for Taylor's ability to practice law. In Lasar v. Ford Motor Co., 399 F.3rd 1101 (9th Cir. 2005), the district court cited counsel for contempt and revoked his *pro hac vice* status. On appeal, the Ninth Circuit stated that the appeal was not moot because the lower court's decision "may expose [counsel] to further sanctions by the bar and portends adverse effects upon counsel's careers and public image...the controversy thus remains live and demands consideration." Id. at 1109 (citing Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1200 n.14 (11th Cir.1985)). A finding that counsel violated a California State Bar Rule of Professional Conduct may similarly expose Taylor to sanctions by the state bar and have lasting effects on Taylor's career and public image. For at least these reasons, the court finds that Taylor's appeal of the Bankruptcy Court's decision is live and not moot. The Court will therefore consider the merits of Taylor's claim.

II.   Grant of Summary Judgment

California Rule of Professional Conduct 3-300 states that a lawyer shall not enter a business transaction or assume an interest adverse to a client unless

> (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and
>
> (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
>
> (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

Cal. State Bar Rule of Prof. Conduct 3-300.

The acquisition of a note for legal services secured by a deed of trust in a client's real property is an "adverse interest" under Rule 3-300. Hawk v. State Bar, 45 Cal.3d 589, 601 (1988). An attorney such as Taylor, seeking to secure fees by deed of trust in real property, must therefore comply with the terms of Rule 3-300 in obtaining such a deed.

The Bankruptcy Court found that the execution of the Note and Deed fell short of the requirements of Rule 3-300(A) because Taylor failed to fully disclose the terms and implications of the Deed in writing and because the terms of the Deed were not fair and reasonable to the Kanes. For the reasons explained below, this court holds that the Bankruptcy Court correctly applied California state law in granting the Kanes' motion for summary judgment.

### A. Disclosure

Rule 3-300(A) requires that all terms of a transaction between a lawyer and client that is adverse to the client's interest be in writing. The Bankruptcy Judge found that Taylor violated the disclosure portion of Rule 3-300(A) because she failed to disclose in writing "that in the event of a future dispute between them the deed of trust can be used to summarily extinguish the client's interest in the property without any judicial scrutiny over disputed fees." Kane v. Taylor, No. 04–11647, slip op. at 3 (Bankr. N.D. Cal. 2005). According to the Bankruptcy Court, "Taylor utterly failed to explain this to the Kanes in writing and her deed of trust must be voided for this reason alone." Id. Taylor does not argue that the Note and Deed, on their face, call attention to the lack of a judicial remedy. Instead Taylor argues that the standard language describing the foreclosure process in the Note and Deed was sufficient to satisfy Rule 3-300. Taylor asserts that the "standard language [of the Deed] objectively discloses the nature of the transaction." Appellant's Opening Brief at 18. Paragraph 11 of the Deed contains the operative language, that "upon default by Trustor in payment of any indebtedness secured hereby" the "Beneficiary may declare all sums secured hereby immediately due and payable" by sale of the property secured by the Deed. Id. at 17.

While the language in the Deed might be sufficient disclosure in the context of an arms-length transaction, Taylor had a heightened responsibility to explain the implications of the terms of

7

1  the Deed to her clients. The California Supreme Court quoted Lord Eldon in requiring an attorney
2  who enters into a business transaction with a client to "make it manifest that [she] gave to [her]
3  client 'all that reasonable advice against [herself] that [she] would have given [her] against a third
4  person.'" Beery v. State Bar, 43 Cal. 3d 802, 812 (1987) (quoting Gibson v. Jeyes, 31 Eng. Rep.
5  1044 (1801)). Here, it is the combination of the ten-day objection period with the foreclosure
6  provision that is most detrimental to the Kanes, and Taylor did not explain this detriment in writing.
7  The Bankruptcy Court found Taylor was deficient in adequately explaining the terms of the Note and
8  Deed to the Kanes, and this court has been presented with no persuasive reason to change that
9  decision.

      B.      Fairness

11  The inquiry in a Rule 3-300 analysis is "whether the entire transaction, in the language of
12  Rule 3-300 was 'fair and reasonable to the client.'" Matter of Gillis, 4 Cal. State Bar Ct. Rptr. 387
13  (2002). California courts have repeatedly indicated disapproval of fee arrangements between
14  attorneys and their clients that permit the attorneys to collect fees in an extrajudicial proceeding. See
15  Hawk, 45 Cal. 3d at 600; Hulland v. State Bar, 8 Cal. 3d 440, 450 (1972). An attorney securing fees
16  with a deed in real property "bears the burden of showing that the dealings between the parties were
17  fair and reasonable and were fully known and understood by the client." Hunniecutt v. State Bar, 44
18  Cal. 3d 362, 372–373 (1988) (citing Clancy v. State Bar, 71 Cal. 2d 140, 146–147 (1969)). Courts
19  are particularly careful in guarding the client's interest in a lawyer–client transaction because the
20  lawyer is in "a superior position to exert unique influence over the dependant party." Beery v. State
21  Bar, 43 Cal. 3d 802, 813 (1987).

22  The Deed provides that bills for new legal services are automatically added to the Deed after
23  a ten-day grace period, during which the Kanes might object. Talyor argues that the fairness of the
24  ten-day period was not briefed by the Kanes and the Bankruptcy Court incorrectly found the ten-day
25  period unfair. With respect to Taylor's first point, in deciding a motion for summary judgment, a
26  court is permitted – indeed, it is required – to examine the entire record whether it is discussed in the
27  briefs or not. Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir. 1975). With

1  regard to Taylor's second point, the Bankruptcy Court noted that, under terms of the Deed, it would
2  be possible for Taylor to submit a bill for legal services and proceed with a forced sale of the
3  property secured by the Deed to satisfy the debt ten days later.  As noted above, there is a strong
4  presumption against the fairness of fee arrangements between a lawyer and a client that permit the
5  attorney to collect the fees in an extrajudicial proceeding.  This court agrees that the combination of
6  the short grace period and the secured nature of the debt were unfair to the Kanes in violation of
7  Rule 3-300(A).

        C.        <u>Failure to Compel Discovery</u>

9          Taylor's counsel unsuccessfully attempted to question Doris Kane about her understanding of
10 the terms of the Note and Deed in order to show that the Kanes understood the terms and
11 implications of the Note and Deed.  The Bankruptcy Judge did not allow further discovery before
12 ruling on the motions for summary judgment in favor of Kanes.  Taylor alleges that the Bankruptcy
13 Court denied her due process of law and abused its discretion by failing to compel discovery.
14         This court reviews discovery decisions for an abuse of discretion.  <u>Qualls</u>, 22 F.3d at 844.  A
15 court abuses its discretion regarding discovery on a motion for summary judgment if the moving
16 party can show that additional discovery would have precluded a grant of summary judgment.  <u>Id.</u>  In
17 this case the Bankruptcy Court did not abuse its discretion by failing to compel further discovery.
18 The Bankruptcy Court ruled in favor of the Kanes because it determined that Taylor failed to fully
19 disclose the terms and implications of the Deed and because the terms of the Deed were not fair and
20 reasonable to the Kanes.  These are objective inquiries, based only on the language of the Note and
21 Deed.  And, it is clear from the Bankruptcy Court's decision that the Judge was basing his conclusion
22 on the terms of the Deed and its "implications", as well as the fact gleaned from the Deed that the
23 Kanes were given only ten days to object to the billings, which the court found was "far too short to
24 be fair".  Tr. at 422.  Additional discovery by Taylor would not have altered the Bankruptcy Court's
25 determination that the Deed's terms were not fair and, therefore, the Bankruptcy Court did not abuse
26 its discretion with regard to discovery.[4]

D.  Improper Motivation to Confirm the Chapter 13 Plan

Taylor also alleges that the Bankruptcy Court found the lien to be invalid as a result of an improper desire to confirm the Kanes' Chapter 13 plan, citing three portions in the record. First, Taylor notes statements made by the Bankruptcy Judge at the September 27, 2001 hearing regarding the validity of the Note and Deed. Tr. at 50–52. Second, Taylor notes the Bankruptcy Judge's statements about proceeding in a timely manner at the hearing on a motion to compel. Tr. at 174–75. Finally, Taylor cites the Bankruptcy Court's Memorandum of Decision itself. The court finds the allegation of improper motivation to be without basis.

At the September 27, 2001 hearing, Judge Jaroslovsky stated that the valididity of the Note and Deed needed to be determined before a Chapter 13 plan could be approved. Tr. at 50–52. However, these statements accurately reflect the law and do not indicate that Judge Jaroslovsky was motivated by a desire to approve a Chapter 13 plan. At the hearing on Taylor's motion to compel, Judge Jaroslovsky did mention a desire to proceed in a timely manner, but there is no indication of improper motivation. Judges are certainly permitted, and encouraged, to seek expeditious resolutions of matters on their dockets. See Southern California Edison Co. v. Lynch, 307 F.3d 794, 807 (9th Cir. 2002). Despite Taylor's assertion to the contrary, Judge Jaroslovsky's Memorandum of Decision does not suggest that the Kanes' ability to conform to a Chapter 13 plan was a motivating factor in the disposition of the case. Therefore, this court holds that the Bankruptcy Court did not improperly consider qualification for a Chapter 13 plan in invalidating the Note and Deed.

III.  Application of Judicial Estoppel

Finally, Taylor alleges that the Bankruptcy Court should have enforced the Deed against the Kanes under a theory of judicial estoppel. The Kanes avoided a judicial lien on their home at 604 Canyon Drive in the Chapter 7 and Chapter 13 bankruptcy proceedings because the homestead exemption and the secured debt against their home exceeded the property's stated value. The debt secured by the Deed to Taylor was essential in both proceedings to prevent a judicial lien. Taylor argues that the Kanes should be estopped from alleging the Note and Deed are invalid because they

derived a benefit from the Note and Deed in prior judicial proceedings.

"Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." In re Cheng, 308 B.R. 448, 452 (9th Cir. B.A.P. 2004). Although judicial estoppel is an equitable doctrine that is not easily defined, the United States Supreme Court has identified three factors that are relevant to the application of the doctrine. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). First, a party's position in the second matter must be "clearly inconsistent" with it's position in the first matter. Id. Second, a court must have accepted the party's earlier position. Id. at 750–751 (noting that a party's inconsistent position does not pose a threat to judicial integrity unless accepted). The third consideration is whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 751.

In re Cheng provides a close factual parallel to the instant action and explains the application of the "clearly inconsistent" standard in a bankruptcy proceeding. In In re Cheng, the appellants avoided a judicial lien on their home through a combination of the homestead exemption and secured debt against their home. In re Cheng, 308 B.R. at 452. Part of the secured debt was to K&S Diversified Investments ("K&S") in the amount of $268,054. Id. This debt was necessary for the Chengs' to avoid the lien. Id. Shortly after filing for lien avoidance the Chengs' filed an objection to the K&S debt on the grounds that, in an earlier bankruptcy proceeding, the value of the K&S debt was listed as $156,000. Id. K&S moved for summary judgment on the basis of judicial estoppel because the Chengs' benefitted from the higher debt valuation in their filing for lien avoidance. Id. The bankruptcy court granted summary judgment, finding that the two positions on the value of the debt were inconsistent and estoppel was necessary to "protect the integrity of the bankruptcy system." Id. at 458.

The Bankruptcy Appellate Panel for the Ninth Circuit reversed and remanded, holding that the Bankruptcy Court abused its discretion by failing to consider the different capacities in which the

Chengs asserted their claims. Id. at 458. The Bankruptcy Appellate Panel held that the Chengs were acting as individuals in filing for lien protection under the Homestead Act. Id. at 454. In filing an objection to the value of the K&S debt, the Chengs were acting as debtors in possession "performing the trustee's fiduciary duty to object to claims in order to maximize payment by the estate on legitimate claims." Id. The Appellate Panel remanded the case for a determination if the Chengs' positions on the value of the K&S debt were in actual conflict, and to determine if the procedural posture of the filings prevented the application of judicial estoppel. Id..

The record in the instant action indicates that the Bankruptcy Court considered the doctrine of judicial estoppel. Tr. at 413–14. Although the Memorandum of Decision does not discuss estoppel, there are legitimate reasons why the Bankruptcy Court could have decided against application of the doctrine. Tr. at 420–22. As in Cheng, the Bankruptcy Court could have decided that the Kanes' seemingly adverse positions on the status of Taylor's Deed were not in conflict. Likewise, the Bankruptcy Court could have determined that a feasible remedy under judicial estoppel did not exist. See Cheng, 308 B.R. at 459 (transferring a windfall from one party to another in bankruptcy does not satisfy the equitable requirement to "avoid doing inequity"). For at least these reasons, this court holds that the Bankruptcy Court did not abuse its discretion in declining to apply the doctrine of judicial estoppel.

CONCLUSION

For the foregoing reasons, this court holds that the memorandum of decision and order of the Bankruptcy Court granting appellee's motion for summary judgment is AFFIRMED.


IT IS SO ORDERED.

Date: November 16, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

12

# ENDNOTES

1. The Kanes Voluntary Petition for Chapter 7 Bankruptcy states the value of 604 Canyon Drive at $660,000.  The property was used to secure four Deeds of Trust for a total of $715,443; a first Deed of Trust to the CIT group for $390,792; a second Deed of Trust to Household Finance for $160,779; a third Deed of Trust to Faye Taylor of $95,680; and a fourth Deed of Trust to George Martinez (one of the Kanes' lawyers) for $66,337.  Tr. at 610–14.

2. Rule 3-300 prohibits a lawyer from entering into a business transaction with a client, or taking a position adverse to a client, unless "(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition."

3. See Cal. Code of Civ. Proc. § 704.730(a)(2).

4. To the extent that additional discovery could have shown that Taylor did fully explain the terms and implications of the Deed, this court finds the Bankruptcy Court's decision to be harmless error.  A determination that the terms of the Deed were not fair and reasonable is itself enough to trigger a violation of Rule 3-300 and summary judgment could be granted on this point alone.